UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| City of Saint Paul, Minnesota, | Civil No. 04-885 (DWF/SRN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Penn-America Insurance Company, | |
| Defendant. | |

Frank E. Villaume, III, and Louise Toscano Seeba, Assistant St. Paul City Attorneys, St. Paul City Attorney's Office, counsel for Plaintiff.

Peter E. Lind, Esq., and Timothy W. Waldeck, Esq., Waldeck & Lind, counsel for Defendant.

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 25, 2005, pursuant to a Motion for Summary Judgment brought by Plaintiff City of Saint Paul ("the City"). Specifically, the City asks the Court to find that Defendant Penn-America Insurance Company ("Penn-America") had a duty to defend and indemnify the City in a suit involving water damage to real property. Penn-America opposes the motion. For the reasons outlined below, the City's motion is granted in part and denied in part.

**Background**

The underlying suit involves real property known as Town Square Park ("the Park"). The Park has a roof consisting of a skylight system, concrete planters, and water features. The

Park was owned by the City for over 20 years, but was leased to a company called Town Square Garden ("TSG") in March 2002.  The lease required TSG to pay rent to the City.  The lease also provided that TSG would:  (1) provide the City with liability insurance; and (2) agree to defend and indemnify the City for any damages caused by TSG's negligence.  On December 31, 2002, the Park was sold to TSG.

As a result of the lease between TSG and the City, TSG purchased commercial insurance policy PAC6222570 ("the Policy") from Penn-America.  The Policy provided coverage for its insureds from March 11, 2002, to March 11, 2003.  The City was named as an additional insured on the Policy.  The Policy's Additional Insured Endorsement stated in relevant part:

> **Who Is An Insured (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

(Affidavit of Louise Toscano Seeba ("Seeba Aff."), ¶ 5, Ex. 4, at 1.)  The City was listed on the Policy's Additional Insured Schedule as described above.

The Policy also contained a Known Occurrence Exclusion.  The Known Occurrence Exclusion denied coverage to the insureds for losses that were known to the insureds prior to the start of the policy period.  (Seeba Aff., ¶ 3, Ex. 2, part 3, at 1.)  The Policy also contained a notice provision that provided that Penn-America was to be notified "as soon as practicable" of an occurrence arising under the Policy.  (Seeba Aff., ¶ 3, Ex. 2, part 3, at 6.)

Town Square Realty, LLC ("TSR") owns property adjacent to and below the Park.  On August 30, 2002, the City was sued by TSR for damage that was allegedly caused to TSR's property as a result of water intrusions onto the property.  On November 8, 2002, Michael Wong d/b/a TSG was added as a defendant to the suit by way of an amended complaint ("the Amended

Complaint"). TSG denied liability and sought indemnification from the City. The City answered the cross-claim and asserted a cross-claim of its own for contribution and indemnity against TSG.

The City contacted Penn-America by telephone to notify Penn-America of the claims against the City and to tender defense of the lawsuit brought by TSR. On August 29, 2003, the City again tendered its defense to Penn-America. On September 9, 2003, Penn-America confirmed receipt of the City's tender of its defense, and conceded that the City was a named insured under the Policy. Nonetheless, Penn-America refused to accept the tender of defense until it had received additional documentation from the City.

On September 19, 2003, the City provided Penn-America with the requested documentation. Approximately one month later, Penn-America again denied the City's tender of its defense. Penn-America denied the City's tender "[b]ecause the Additional Insured Endorsement included with the policy amends the 'Who is an Insured' section of the policy to add the City of Saint Paul only as to liability arising out of Town Square Garden's liability, which is denied by our first named insured, we cannot consider the City to be an insured as defined within the policy." (Seeba Aff., ¶ 10, Ex. 10, at 1.) In response, the City filed this action alleging breach of contract and seeking a declaratory judgment that Penn-America be forced to indemnify the City, pay the City's expenses in the underlying matter, and pay the City's expenses in bringing this suit.

**Discussion**

I. **Motion for Summary Judgment**

　A. **Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inference that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

　B. **Duty to Defend and Indemnify**

"[T]he interpretation of insurance contract language is a question of law." *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn. 1992). Insurance coverage issues are

questions of law for the courts. *State Farm Ins. Companies v. Seefeld,* 481 N.W.2d 62, 64 (Minn. 1992). Doubts as to coverage must be resolved against the insurer issuing the policy and in favor of coverage. *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn. 1979).

The City asks the Court to find that Penn-America has a duty to defend it in the underlying suit. An insured's duty to defend an insured is contractual. *Meadowbrook, Inc. v. Tower Ins. Co., Inc.,* 559 N.W.2d 411, 415 (Minn. 1997). The duty to defend covers those claims that arguably fall within the scope of the insurance policy. *Id.* In determining whether such a duty exists, a court must compare the allegations in the complaint in the underlying action with the language in the insurance policy. *Id.*

The City also asks the Court to find that Penn-America has a duty to indemnify it for any damages found in the underlying suit. In addition to the duty to defend, an insurer assumes the duty to indemnify its insured. *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.,* 496 N.W.2d 411, 415 (Minn. Ct. App. 1993). However, the duty to indemnify is not as broad as the duty to defend. *Franklin v. W. Nat'l Mut. Ins. Co.,* 574 N.W.2d 405, 406 (Minn. 1998).

1. **Notice Provision**

As a preliminary matter, Penn-America claims that the City may have waived any coverage rights it might have had by failing to notify Penn-America of the underlying suit until one year after the suit was brought against TSG and the City. In contrast, the City asserts that Penn-America has either waived its notice claim or has failed to make a showing of actual prejudice. The City points to the fact that Penn-America has not raised the notice issue and that the notice issue was not cited as a basis for Penn-America's denial of the City's tender of

defense. Further, the City asserts that Penn-America has not, and cannot, make a showing of actual prejudice.

The Court finds that the notice provision does not bar the City from seeking its defense costs or indemnification pursuant to the Policy. Penn-America did not raise the notice issue in a timely manner and has not presented any evidence of actual prejudice. Accordingly, the Court finds that Penn-America cannot use the notice provision to bar the City's suit.

## 2. Additional Insured Endorsement

Penn-America claims that it is not required to defend or indemnify the City for any damages resulting from the City's actions or omissions. In support of this assertion, Penn-America cites to the Additional Insured Endorsement's language that provides coverage to additional insureds "only with respect to liability arising out of your ongoing operations performed for that insured." (Seeba Aff., ¶ 5, Ex. 4, at 1.) Penn-America contends that there is evidence in the record that supports its assertion that the City's actions or omissions are the sole cause of the damages to TSR's property.

The City asserts that Penn-America's interpretation of the Additional Insured Endorsement is erroneous. The City contends that the Additional Insured Endorsement does not provide whose liability triggers coverage. The City asserts that if Penn-America wanted to preclude coverage for the City's actions or omissions, Penn-America could have done so as is evidenced by language in the Policy's contractual liability amendment that explicitly excludes claims resulting from the sole negligence of the indemnitee. (Seeba Aff., ¶ 3, Ex. 2, part 1, at 1.)

The City also cites to Minnesota case law that it asserts supports its interpretation of the Additional Insured Endorsement's language. In *Andrew L. Youngquist, Inc. v. Cincinnati Ins.*

*Co.,* 625 N.W.2d 178 (Minn. Ct. App. 2001), the Minnesota Court of Appeals held that an additional insured was covered for a claim arising from its own actions where the additional insured endorsement provided coverage to an additional insured ". . . but only with respect to liability arising out of your ongoing operations performed for that insured . . . ." *Id.* at 183.

Based on a review of the record and the case law, the Court finds that the language of the Policy's Additional Insured Endorsement does not exclude from coverage the claims brought against the City based solely on the City's actions or omissions. Instead, the Policy covers the City ". . . if there is a causal relationship between the place covered by insurance and the acts giving rise to legal liability . . . ." *Hormel Foods Corp. v. Northbrook Prop. & Cas. Ins. Co.,* 938 F. Supp. 555, 557 (D. Minn. 1996). The Court finds that such a causal relationship between the Park and the water intrusions alleged in the underlying suit does exist. Thus, the language of the Policy's Additional Insured Endorsement requires Penn-America to defend and indemnify the City even if the water intrusions occurred solely due to the City's actions or omissions.

### 3. Known Occurrence Exclusion

Penn-America contends that genuine issues of material fact exist as to whether or not the City was aware of the water infiltration issues prior to the inception of the Policy. The Policy excludes from coverage losses that were known to the insureds prior to the start of the policy period pursuant to the Policy's Known Occurrence Exclusion. In this case, Penn-America asserts that the City was aware of water infiltration issues from the Park's skylights, planters, and roof system prior to the inception of the Policy. Specifically, Penn-America cites to evidence showing that leaks were related to the roof system components as early as 1996.

7

The City asserts that Penn-America's claims that the City was aware of the water infiltration issues prior to the existence of the Policy are without merit. The City points to the fact that all of the incidents cited by TSR in the underlying suit occurred after the Policy was executed. The City contends that Penn-America has breached its duty to defend as it has not met its burden of showing that all of the claims fall outside the scope of coverage.

The Court finds that Penn-America has a duty to defend the City, but that genuine issues of material fact exist with regard to the Known Occurrence Exclusion. The Amended Complaint from the underlying suit contains five claims. The City and TSG are named as joint defendants in three out of the five claims, namely the trespass, negligence, and nuisance claims. In each of the claims, TSR generally alleges that the City and TSG are responsible for permitting water to flow onto TSR's property and that, as a result, TSR's property suffered damage and the damage interfered with TSR's ability to use its property.

As previously discussed, Penn-America has the burden of establishing that all of the claims in the underlying suit "fall clearly outside the scope of coverage." *Westfield Ins. Co. v. Kroiss,* 694 N.W.2d 102, 106 (Minn. Ct. App. 2005). The Court finds that the claims in TSR's Amended Complaint at least arguably fall within the Policy's coverage, as any damages in the underlying suit arising from either TSG or the City's actions or omissions are covered by the Policy. However, the Court also finds that genuine issues of material fact exist regarding the City's awareness of the water infiltration issue prior to the policy period.

While TSR's claims in the underlying suit only cover incidents occurring during the policy period, Penn-America has submitted evidence that water infiltration issues may have occurred prior to the inception of the Policy. Although the Court finds that Penn-America has

8

submitted sufficient evidence to avoid summary judgment on the indemnification issue, the Court finds that the evidence regarding this exclusion is not sufficient to allow Penn-America to avoid the broader duty to defend.  *Id.* at 106 (a duty to defend exists where fact issues remain to be resolved on indemnification issues).  Therefore, Penn-America must defend the City in the underlying suit and reimburse the City for those expenses that the City has incurred in defending itself, but the indemnification issue cannot be resolved at summary judgment.

In addition to seeking its defense costs and indemnification in the underlying suit, the City requests that this Court allow it to recover the attorney fees it has incurred in prosecuting the declaratory judgment against Penn-America.  "Attorney fees are recoverable in a declaratory judgment action *only* if there is a breach of a contractual duty or statutory authority exists to support such recovery."  *American Standard Ins. Co. v. Le*, 551 N.W.2d 923, 927 (Minn. 1996) (citing *Morrison v. Swenson*, 142 N.W.2d 640, 647 (Minn. 1966)) (emphasis added).  The insured cannot recover attorney fees "incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect–usually by wrongfully refusing to defend the insured."  *Id.*

In this case, Penn-America has refused the City's tender of defense on several occasions.  The City had no method of vindicating its rights under the Policy other than to bring this suit.  Thus, the Court finds that the City is entitled to the recovery of the attorney fees it has expended in bringing about this federal declaratory judgment suit.

## Conclusion

The Court believes it is in the best interests of the parties to negotiate a resolution of this dispute among themselves.  As the parties may already be aware, Magistrate Judge

Susan Richard Nelson is available to assist in the negotiation of a settlement should the parties find such services helpful.  If the Court may be of assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank at 651-848-1296, or Beverly Riches, Calendar Clerk for Magistrate Judge Susan Richard Nelson at 651-848-1200.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff City of Saint Paul's Motion for Summary Judgment (Doc. No. 34) is **GRANTED IN PART** and **DENIED IN PART,** as follows:

   a. Plaintiff City of Saint Paul's Motion for Summary Judgment is **GRANTED** insofar as the City requests a declaratory judgment that Defendant Penn-America Insurance Company has a duty to defend the City in the underlying matter.  Thus, Penn-America must reimburse the City for attorney fees already expended in the underlying matter, future attorney fees expended in defending the underlying matter, and attorney fees expended in bringing the federal declaratory judgment suit.

   b. Plaintiff City of Saint Paul's Motion for Summary Judgment is **DENIED** insofar as the City requests a declaratory judgment that Defendant Penn-America Insurance Company must indemnify the City in the underlying matter.


Dated:  July 22, 2005           s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court